HARTER SECREST & EMERY LLP
1600 Bausch and Lomb Place
Rochester, NY 14604-2711
Telephone No. (585) 231-1201
Facsimile No. (585) 232-2152

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF ROCHESTER, NEW YORK, ROSILAND BROOKS-HARRIS, CAPITAL MARKETS ADVISORS, LLC, RICHARD GANCI, AND RICHARD TORTORA, <br><br> Defendants. | Case No. 22-cv-6273 <br><br> **ANSWER OF DEFENDANTS CITY OF ROCHESTER AND ROSILAND BROOKS-HARRIS** <br><br> **Jury Trial Demanded** |

Defendants City of Rochester, New York (the City) and Rosiland Brooks-Harris, by their attorneys Harter Secrest & Emery LLP, answer the complaint filed by Plaintiff Securities and Exchange Commission (SEC) upon information and belief as follows:

1. Deny the allegations in paragraph 1, except admit and aver that "the City of Rochester, New York" issued Bond Anticipation Notes (collectively, the BAN) dated "August 7, 2019" to investors in the aggregate principal amount of $68,905,000 and that the "the City of Rochester, New York" issued Revenue Anticipation Notes (collectively, the RAN) dated "August 7, 2019" to investors in the aggregate principal amount of $50,000,000. Further admit and aver that the Official Statement of the City relating to the BAN and RAN, dated July 25, 2019 (the Official Statement), stated that it had "been duly executed and delivered by the Director of Finance of the City" and that the Director of Finance of the City at that time was Brooks-Harris.

1

2. The first sentence of paragraph 2 constitutes the SEC's characterization of the Official Statement to which no response is required. To the extent a response is required, deny the allegations in the first sentence of paragraph 2, except admit that the quoted language is found within the Official Statement and respectfully refer the Court to the text of the Official Statement for a true and complete statement of its contents. Deny the allegations in the second sentence of paragraph 2, except admit and aver that the Official Statement specified that its proceeds would "be applied to finance water supply facilities ($5,359,000), local works ($1,281,000), parking ($1,821,000), library ($266,000), Refuse ($3,999,000), War Memorial ($471,000), School ($37,850,000), and general City purposes including street construction and reconstruction ($17,858,000)."

3. Deny the allegations in paragraph 3, except admit and aver that the Official Statement "included financial information about the" Rochester City School District (the School District or the District). Further admit and aver that the Official Statement specifies that Capital Market Advisors, LLC (CMA) "served as the independent financial advisor to the City in connection with this transaction" and that the Official Statement was signed by Brooks-Harris.

4. Deny the allegations in paragraph 4, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that "in a July 2019 call with a credit rating agency, the District's then-CFO stated that the District's spending was within the budget for fiscal year 2019 that had just ended on June 30, 2019."

5. Deny the allegations in paragraph 5, except deny knowledge and information sufficient to form a belief as to the truth of the allegation that "District overspent its budget for fiscal year 2019 by $27.6 million." Admit and aver that September 18, 2019 is 42 days after August 7, 2019, and that a letter signed by School District Board of Education President Van

Henri White and addressed to Chancellor Betty Rosa, dated September 19, 2019, stated that the School District had "learned late Wednesday evening there are concerns related to the preliminary findings in the District's 2018-2019 internal year-end audit reconciliation" and further stated that "[e]arly analysis of the 2018-2019 budget shows that these concerns may be related to overspending in certain areas, such as increased health insurance costs due to our status of being self-insured and rising costs for required special education services and staff."  Further admit and aver that Moody's Investors Service issued a Credit Opinion dated December 9, 2019, which stated that it "downgraded the city's long-term rating to A2 from Aa3" and that the New York State Department of Education issued a press release, dated May 21, 2020, stating that it had appointed a "State Monitor for the Rochester City School District."

6. Deny the allegations in paragraph 6, except deny knowledge and information sufficient to form a belief as to the truth of the allegations relating to CMA and Ganci.

7. Deny the allegations in paragraph 7, except admit that the quoted language is found within a Moody's Investors Service Credit Opinion dated December 9, 2019, and respectfully refer the Court to the text of the that opinion for a true and complete statement of its contents.

8. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 8.

9. Deny the allegations in paragraph 9, except deny knowledge and information sufficient to form a belief as to the truth of the allegations following the phrase "Defendants CMA, Ganci and Tortora."

10. Paragraph 10 consists of legal conclusions, to which no response is required.

3

11. Neither admit nor deny the allegations in paragraph 11 because the allegations are vague and ambiguous. To the extent a response is required, deny the allegations in paragraph 11.

12. Paragraph 12 consists of legal conclusions, to which no response is required. To the extent a response is required, deny the allegations in paragraph 12, except admit that Rochester, New York is found within the Western District of New York.

13. Paragraph 13 consists of legal conclusions, to which no response is required. To the extent a response is required, deny the allegations in paragraph 13, except admit that the City "is a municipality located in Monroe County," that the City has a "Mayor and nine-member City Council."

14. Admit the allegations in paragraph 14.

15. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 16.

17. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18. Deny the allegations in paragraph 18, except admit that the School "District is a New York public school district located in the City of Rochester," that the School District has "a seven-member elected Board of Education" and that the School District has no authority "to issue debt . . . on its behalf." Admit and aver that the School District has operated with a "fiscal year" ending June 30. Further aver that, according to New York State Department of Education, the "total K-12 public school students" population, as of June 2020, was 25,017."

19. Admit the allegations in paragraph 19.

20. The first sentence of paragraph 20 constitutes the SEC's characterization of the Official Statement to which no response is required. To the extent a response is required, deny the allegations in the first sentence of paragraph 20, respectfully refer the Court to the text of the Official Statement for a true and complete statement of its contents, and aver that the Official Statement specified, among other things, that the proceeds of the BAN would "be applied to finance water supply facilities ($5,359,000), local works ($1,281,000), parking ($1,821,000), library ($266,000), Refuse ($3,999,000), War Memorial ($471,000), School ($37,850,000), and general City purposes including street construction and reconstruction ($17,858,000)" and that the proceeds of the RAN would "be used only for purposes specified in the 2019-2020 budget of the District and will not be used to redeem or renew revenue anticipation notes presently outstanding." Deny the allegations in the second sentence of paragraph 20.

21. Deny the allegations in paragraph 21.

22. Deny the allegations in paragraph 22, except admit and aver that Brooks-Harris reviewed and signed the Official Statement, the Preliminary Official Statement dated July 17, 2019, and two closing certificates, and that Brooks-Harris reviewed a Supplement to Preliminary Official Statement dated July 23, 2019, and a Supplement to Preliminary Official Statement dated July 24, 2019

23. Deny the allegations in the first sentence of paragraph 23, except admit that "CMA and Ganci facilitated" the "offering process" related to the BAN and the RAN. The second sentence of paragraph 23 constitutes the SEC's characterization of the contract between the City and CMA to which no response is required. To the extent a response is required, deny the allegations in the second sentence of paragraph 23, except admit that the quoted language is

found within the Agreement for Professional Services between the City of Rochester and CMA dated June 1, 2018 (CMA Contract), and respectfully refer the Court to the text of the CMA Contract for a true and complete statement of its contents.

24. Admit the allegations in paragraph 24.

25. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25, except admit and aver that the School District reported, as part of the Statement of Revenues, Expenditures and Changes in Fund Balance of its General Fund, included in the Official Statement, a 2014 fiscal year end fund balance of $77,139,826, and a 2018 fiscal year end fund balance of $49,636,366.

26. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, except admit that the quoted language in the third sentence of paragraph 26 is found within a Moody's Investors Service Credit Opinion dated February 12, 2019, and respectfully refer the Court to the text of that opinion for a true and complete statement of its contents.

27. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

28. Deny the allegations in paragraph 28 and in heading "A" immediately preceding paragraph 28, except admit and aver that Brooks-Harris and other City personnel met in 2019, sometimes on weekly basis, with School District personnel, including School District Finance Director Everton Sewell, and that those meetings including discussions of cash flows. Further aver that the Official Statement included a cash flow statement from the School District identifying a decline in cash of more than $60 million.

6

29. Deny the allegations in paragraph 29.

30. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 30. Deny the allegations in the second sentence of paragraph 30, except admit that the City "had not issued a RAN" "since 2004." Further aver that the City issued revenue anticipation notes on October 22, 2004, and that an accompanying official statement specified that the proceeds of those notes would "be applied to redeem notes or finance construction and renovation of school buildings ($7,795,000), water supply facilities ($7,148,300), parking garage improvements ($300,000), public market ($470,000), sewer facilities ($1,269,000), and general City purposes including street construction and reconstruction ($30,332,700)."

31. Deny the allegations in paragraph 31 and in heading "B" immediately preceding paragraph 31, except admit that "Ganci and CMA had served as the City's municipal advisor for over 10 years (since 2008)" and deny knowledge or information sufficient to form a belief as to the truth of the allegation that "Ganci was personally familiar with the City and the District's finances."

32. Deny the allegations in the first sentence of paragraph 32, except admit that "in November 2018, Ganci . . . and Brooks-Harris" communicated about "the possibility of issuing a RAN," and deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of paragraph 32.

33. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentence of paragraph 33. Deny the allegations in the third sentence of paragraph 33 but admit that the Preliminary Official Statement "contained the District's projected fiscal year 2020 cash flow statement."

34. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 34. Deny the allegations in the second sentence of paragraph 34, except aver that Supplements to the Preliminary Official Statement dated July 23, 2019 and July 24, 2019, included cash flow statements from the School District identifying a decline in cash of more than $60 million.

35. Deny the allegations in the first sentence of paragraph 35. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 35.

36. Deny the allegations in heading "III" immediately preceding paragraph 36. Deny the allegations in paragraph 36.

37. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

38. Deny the allegations in the first sentence of paragraph 38, except admit and aver that an email from Ganci dated July 10, 2019, states a "concern" with "the structural cash issue at the [District]" and states, "I suspect the problem might get worse absent drastic changes." Further deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 38.

39. Deny the allegations in paragraph 39, except admit and aver that, "[o]n July 11, 2019, Brooks-Harris, Ganci, and other[s] . . . from the City and the District" had a telephone conference with a "rating analyst."

40. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

41. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, third, and fifth sentences in paragraph 41.  Deny the allegations in the fourth

42. Deny the allegations in paragraph 42, except admit that Moody's Investors Service assigned a rating of "MIG 1" on the BAN and the RAN and admit and aver that Moody's Investors Service assigned a rating of "Aa3" for the outstanding uninsured bonded debt of the City.

43. Deny the allegations in the first sentence of paragraph 43 and in heading "IV" immediately preceding paragraph 43, except admit and aver that the City published a Preliminary Official Statement on July 17, 2019, and Supplements to the Preliminary Official Statement on July 23 and July 24, 2019, and that the City posted the Official Statement, dated July 25, 2019, on or about July 29, 2019.

44. Deny the allegations in paragraph 44.

45. Deny the allegations in paragraph 45.

46. Deny the allegations in paragraph 46, except admit and aver that the School District's audited financial statements for the fiscal year ended June 30, 2018 were included in the Official Statement.

47. Deny the allegations in paragraph 47.

48. Deny the allegations in paragraph 48.

49. Deny the allegations in paragraph 49.

50. Deny the allegations in paragraph 50.

51. Deny the allegations in paragraph 51, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 51.

52. Deny the allegations in paragraph 52, except admit and aver that the City offered the BAN and RAN through a competitive sale commencing on July 25, 2019, and closing on August 7, 2019, and admit that the City issued the BAN and RAN.

53. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 and in heading "V" immediately preceding paragraph 53.

54. Deny the allegations in paragraph 54, except admit and aver that, by a notice dated September 26, 2019, Moody's Investor Service announced that it had "placed the City of Rochester, NY's Aa3 issuer and general obligation limited tax ratings on review for possible downgrade" and stated that the "review for downgrade" was "prompted by recent reports that the City School District, a component unit of the City of Rochester, incurred a $30 to 50 million budget shortfall in the 2018-2019 fiscal year, far exceeding our expectations for declines to reserves" and because "[a]dditionally, the city has asked the State of New York to separate the district from the city, raising questions about the ongoing governance between the city and the district."

55. Deny the allegations of paragraph 55, except admit that "[o]n October 3, 2019, the City filed a voluntary notice . . . on the Municipal Securities Rulemaking Board's Electronic Municipal Market Access ('EMMA') system" and that the quoted language is found within that voluntary notice and respectfully refer the Court to the text of the voluntary notice for a true and complete statement of its contents.

56. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56.

57. The allegations in paragraph 57 constitute the SEC's characterization of a Moody's Investors Service Credit Opinion dated December 9, 2019, to which no response is required. To the extent a response is required, admit that the quoted language is found within the credit opinion and respectfully refer the Court to the text of the that opinion for a true and complete statement of its contents.

58. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence paragraph 58, except admit and aver that New York State enacted legislation on or about April 3, 2020, providing that the "Rochester city school district shall be eligible to receive an apportionment pursuant to this act in an amount equal to the product of thirty-five million dollars ($35,000,000)," payable as late as "2048-2049" and separately providing for the appointment of a "monitor to provide oversight, guidance, and technical assistance related to the educational and fiscal policies, practices, programs and decisions of the school district, the board of education and the superintendent" of the School District. Further admit and aver that the New York State Department of Education issued a press release, dated May 21, 2020, stating that it had appointed a "State Monitor for the Rochester City School District."

59. Deny the allegations in paragraph 59 and in heading "VI" immediately preceding paragraph 59, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of the paragraph.

60. Deny the allegations in paragraph 60, except admit and aver that Moody's Investors Service issued a Credit Opinion dated December 9, 2019, which stated that it "downgraded the city's long-term rating to A2 from Aa3" and "also downgraded the city's [BAN] to MIG 2 and affirmed the MIG 1 rating on the [RAN]." Further aver that Moody's

Investors Service issued another Credit Opinion dated July 10, 2020, which upgraded the rating of the BAN to MIG 1.

61. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61, except admit and aver that the City "issued a revenue anticipation note" dated August 5, 2020, "which was unrated."

62. Deny the allegations in paragraph 62 and in heading "VII" immediately preceding paragraph 62.

63. Deny the allegations in paragraph 63.

64. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 and in heading "VIII" immediately preceding paragraph 64.

65. Paragraph 65 consists of legal conclusions, to which no response is required.

66. Paragraph 66 consists of legal conclusions, to which no response is required.

67. Paragraph 67 consists of legal conclusions, to which no response is required.

68. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68.

69. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69.

70. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

71. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71.

72. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72.

73. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73.

74. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

75. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

76. Deny the allegations in paragraph 76.

77. Deny the allegations in paragraph 77.

78. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

79. Deny the allegations in paragraph 79.

80. Deny the allegations in paragraph 80.

81. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

82. Deny the allegations in paragraph 82.

83. Deny the allegations in paragraph 83.

84. Deny the allegations in paragraph 84.

85. Deny the allegations in paragraph 85

86. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

87. Deny the allegations in paragraph 87

88. Deny the allegations in paragraph 88.

89. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

90. Deny the allegations in paragraph 90.

91. Deny the allegations in paragraph 91.

92. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

93. Admit the allegations in paragraph 93

94. Deny the allegations in paragraph 94.

95. Deny the allegations in paragraph 95.

96. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

97. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97.

98. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98.

99. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

100. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100.

101. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101.

102. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

103. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103.

104. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104.

105. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

106. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106.

107. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107.

108. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108.

109. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109.

110. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

111. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111.

112. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 112.

113. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113.

114. Repeat and reallege responses to the allegations in paragraphs 1 through 74 as though fully set forth in this paragraph.

115. Deny the allegations in paragraph 115.

116. Deny the allegations in paragraph 116.

117. Deny the allegations in paragraph 117.

118. Deny the allegations in paragraph 118.

119. Deny the allegations in paragraph 119.

120. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120.

121. Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121.

122. The allegations in the unnumbered paragraph following paragraph 121 and commencing with the word "WHEREFORE" state Plaintiff SEC's prayer for relief, to which no response is required. To the extent a response is required, deny that Plaintiff is entitled to the requested relief or any relief whatsoever.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

123. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part for failure to state a claim upon which relief could be granted.

### Second Affirmative Defense

124. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part for failure to comply with Rules 8 and/or 9(b) of the Federal Rules of Civil Procedure.

### Third Affirmative Defense

125. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part because the City and Brooks-Harris did not make any false statements or omissions and cannot be held responsible for false statements or omissions made by the District or others.

### Fourth Affirmative Defense

126. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part because the alleged misstatements or omissions were not material.

### Fifth Affirmative Defense

127. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part because they had no duty to disclose the information alleged to have been omitted.

### Sixth Affirmative Defense

128. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part because the City and Brooks-Harris did not act, or fail to act, with the required level of scienter.

### Seventh Affirmative Defense

129. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part because the City and Brooks-Harris acted in good faith on a belief or opinion honestly held.

### Eighth Affirmative Defense

130. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part because the City and Brooks-Harris acted in reliance on the District.

### Ninth Affirmative Defense

131. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part because the City and Brooks-Harris acted in permissible reliance on the District.

### Tenth Affirmative Defense

132. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part because the City and Brooks-Harris acted at all relevant times in good faith reliance on professionals.

### Eleventh Affirmative Defense

133. The SEC's claims against the City and Brooks-Harris should be dismissed in whole or in part because the SEC seeks remedies not authorized by law.

### JURY DEMAND

134. The City and Brooks-Harris demand a jury on all issues triable by jury.

WHEREFORE, the City and Brooks-Harris demand judgment dismissing the SEC's complaint and granting such other and further relief as this Court deems just and proper, including costs and disbursements.

Dated: November 11, 2022
      Rochester, New York

HARTER SECREST & EMERY LLP

By: /s/ Brian M. Feldman
Brian M. Feldman
Laura K. Schwalbe
1600 Bausch & Lomb Place
Rochester, New York 14604
Telephone No. (585) 231-1201
Facsimile No. (585) 232-2152
bfeldman@hselaw.com
lschwalbe@hselaw.com